# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

JOHN ELDRIDGE CONE, JR.,    )
                                     )
         Petitioner,       )
                                     )
v.                            ) **Case No. CIV 16-384-JHP-KEW**
                                     )
JANET DOWLING, Warden,     )
                                     )
         Respondent.     )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is a pro se state prisoner in the custody of the Oklahoma Department of Corrections who currently is incarcerated at Dick Conner Correctional Center in Hominy, Oklahoma. He is attacking his conviction in Muskogee County District Court Case No. CF-2012-749 for First Degree Murder (Count 1) and Assault and Battery with a Deadly Weapon (Count 2).

Following the Court's determination that Petitioner had filed a mixed petition with exhausted and unexhausted claims (Dkt. 12), Petitioner advised the Court that he would proceed with only his exhausted claims (Dkt. 13). He raises the following exhausted claims, as set forth in the Court's Opinion and Order entered on August 21, 2017 (Dkt. 14 at 4):

> (1) Trial counsel was ineffective for failing to object to allegedly defective jury instructions.

> (2) Trial counsel was ineffective for failing to object to alleged instances of prosecutorial misconduct.

(3) Cumulative error deprived Petitioner of a fair trial.

*Id.*

Respondent has filed a response to the exhausted claims (Dkt. 17) and has submitted the following records to the court for consideration in this matter:

A.      Petitioner's direct appeal brief.

B.      The State's brief in Petitioner's direct appeal.

C.      Summary Opinion affirming Petitioner's judgment and sentence.

D.      Transcripts

E.      State court record.

## Background

On direct appeal, the State set forth the facts of the case as follows:

This case arises from the defendant's murder of Skylar Brewer and his assault and battery with deadly weapon of Robert Carmans in Muskogee, Oklahoma, on September 6, 2012. Relevant facts are as follows. Tenesha Nunley had known the defendant for a couple of months in September 2012 (Tr. Vol. II, 5). The defendant needed to go to his mother's house on September 6, 2012, and he asked Ms. Nunley if he could borrow her vehicle, an older model blue Tahoe (Tr. Vol. II, 6). Ms. Nunley allowed him to, and the defendant left Ms. Nunley's house.

Skylar Brewer, hereinafter referred to as the victim, and Robert Carmans were over at Letreece [sic] Smith's house that same evening (Tr. Vol. I, 179). Ms. Smith drove the victim and Mr. Carmans over to Ms. Nunley's house to purchase PCP (Tr. Vol. I, 181; Vol. II, 42). When they arrived at Ms. Nunley's house, only the victim went inside to purchase the PCP from Ms. Nunley (Tr. Vol. I, 181; Vol. II, 9, 43). While they were waiting at Ms. Nunley's house, the defendant returned, and the defendant saw the victim leave Ms. Nunley's house and get inside Ms. Smith's car (Tr. Vol. II, 129).

The defendant went inside Ms. Nunley's house to return her keys to

her. The defendant then noticed that twenty-five dollars ($25.00) he had placed on Ms. Nunley's dryer was missing (Tr. Vol. II, 8, 192). Ms. Nunley did not know anything about the missing money, but confirmed that the victim was the only person that had been in her house since the defendant had left (Tr. Vol. II, 131). Ms. Nunley helped the defendant attempt to call the victim, but the victim was not answering his phone (Tr. Vol. II, 131). The defendant then decided to drive around and look for the [victim]. However, the defendant was unable to locate the victim and returned to Ms. Nunley's house (Tr. Vol. II, 132-33).

Ms. Nunley was finally able to make contact with the victim (Tr. Vol. II, 133). The victim told the defendant to meet him at the Not-a-Spot Carwash and he would return the money to him (Tr. Vol. II, 135). The defendant again borrowed Ms. Nunley's vehicle to meet the victim and get his money back (Tr. Vol. II, 12). The defendant arrived at the carwash and asked around for the victim. No one knew where he was so the defendant began to "holler" the victim's name aloud (Tr. Vol. II, 46).

Ms. Smith, Mr. Carmans and the victim had returned to Ms. Smith's house. Ms. Smith was unloading groceries and taking them inside while Mr. Carmans and the victim stayed out by Ms. Smith's car parked in the driveway and smoked the PCP the victim had purchased from Ms. Nunley (Tr. Vol. I, 181-82). Ms. Smith's house was close enough to the carwash that she heard someone yelling for the victim. She told the victim someone was looking for him, so he whistled and yelled, "I'm over here." (Tr. Vol. I, 194; Vol. II, 47, 73).

Travis Dobbins and his wife, Jullie Brittain, lived across the street from Ms. Smith (Tr. Vol. I, 143, 163). They were outside on the evening of September 6, 2012, when they noticed a vehicle pull up and park on their side of the street (Tr. Vol. I, 144, 168). The driver of the vehicle got out and headed across the street towards Ms. Smith's house. As the driver approached the people standing out by Ms. Smith's car, he started yelling, "Where's my money!" (Tr. Vol. I, 146, 169). Mr. Dobbins heard someone [say], "We don't have your money," and "You just need to leave." (Tr. Vol. I, 148).

Ms. Smith observed the defendant park across the street and start to walk towards her house (Tr. Vol. II, 49). The defendant said, "Where's my money!" Ms. Smith told him to "[c]hill out," and asked, "What's going on?" (Tr. Vol. II, 50). The defendant was about ten (10) feet away from

the victim at the time (Tr. Vol. II, 51). At first the victim was asking, "What are you talking about?" But then the victim reached in his back pocket and handed the defendant some money (Tr. Vol. II, [52]). The defendant took a few steps back, said, "F' this stuff," and began shooting at the victim (Tr. Vol. I, 148, 170; Tr. Vol. II, 53). The defendant then got back in Ms. Nunley's vehicle and fled the scene (Tr. Vol. I, 149). The victim received a total [of] four gunshot wounds from which he died, and Mr. Carmans' arm was grazed by a bullet (Tr. Vol. I, 133-35, 184). . . .

(Dkt. 18-2 at 8-11) (footnote omitted).

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Ineffective Assistance of Trial Counsel**

Petitioner alleges his trial counsel was ineffective in failing to object to allegedly defective jury instructions and alleged instances of prosecutorial misconduct. "There is a strong presumption that counsel provided effective assistance of counsel and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984),

the United States Supreme Court set forth the two-part test for determining the validity of

a habeas petitioner's claim of ineffective assistance of counsel:

> . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . .

*Strickland*, 466 U.S. at 687.

The Supreme Court has since expanded the application of *Strickland* in habeas

corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2018) (emphasis in original). When evaluating

the state court's resolution of *Strickland*'s performance requirement, the federal courts

must "use a 'doubly deferential' standard of review that gives both the state court and the

defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013)

(quoting *Cullen v. Pinholster*, 563 U.S. 170, 189-90 (2011)).

**Jury Instructions**

In his direct appeal to the Oklahoma Court of Criminal Appeals (OCCA), Petitioner raised a claim that fundamentally defective jury instructions violated his right to due process. He also raised a claim that trial counsel was ineffective in failing to object to the alleged errors in the jury instructions. The OCCA rejected both claims on the merits and upheld Petitioner's convictions and sentences in *Cone v. State*, No. F-2014-477, slip op. at 2-3 (Okla. Crim. App. Aug. 5, 2015) (Dkt. 18-3):

> Reviewing Cone's instructional error challenge for plain error only, we find none. See *Hogan v. State*, 139 P.3d 907, 923. The trial court did not err in submitting a flight instruction because it was warranted in this case. *See Mitchell v. State*, 876 P.2d 682, 684 (Okla. Crim. App. 1993). Any error in the submission of OUJI 3.3 did not affect the outcome of the trial. Taken as a whole, the jury instructions did not allow jurors to recommend a sentence based on probabilities, but on the evidence presented. Cone has not shown plain error.
>
> Nor can Cone show plain error resulted from the trial court's instructions concerning a witness's prior inconsistent statement, the court's instruction on other crimes evidence or from the omission of certain heat of passion manslaughter instructions because the alleged deficiencies did not affect the outcome of the trial or result in a substantial violation of a constitutional or statutory right. *See McIntosh v. State*, 237 P.3d 800, 803 (Okla. Crim. App. 2010). . . .

*Cone*, slip op. at 2. "Cone cannot show any prejudice from defense counsel's failure to object to or request the appropriate instruction as alleged in Proposition 1 . . . ." *Id*. at 3.

In his habeas petition, Petitioner has abandoned his defective jury instruction claim, only raising a claim that trial counsel was ineffective in failing to object to the jury instructions. Because Petitioner's underlying claims fail on the merits, however, his

claim of ineffective assistance of counsel for failing to raise these issues also must fail. *See Cannon v. Mullin*, 383 F.3d 1152, 1162 (10th Cir. 2004) (finding no deficient performance in defense counsel's failure to object when there was "no meritorious state-law objection available" to counsel). *See also Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (holding that appellate counsel's failure to raise a meritless claim does not amount to constitutionally ineffective assistance).

Petitioner specifically alleges his trial counsel was ineffective in failing to raise objections to the following: (1) the flight instruction, (2) the instruction that the verdict must be based on probabilities and not possibilities, (3) the instruction on the use of a witness's prior inconsistent statement, (4) failure to instruct on the proper use of other crimes or bad acts evidence, and (5) the instruction on the lesser crime of manslaughter. The OCCA reviewed the merits of these claims for plain error, as none of the allegations were raised in the trial court, and found no error. *Cone*, slip op. at 2. With regard to the claim of ineffective assistance of counsel for failing to raise these claims, citing *Strickland*, the OCCA determined Petitioner was unable to show prejudice, because any instructional error was harmless. *Cone*, slip op. at 3. This Court finds the OCCA's determination was not contrary to, or an unreasonable application of *Strickland*.

**Flight Instruction**

Petitioner alleges his trial counsel was ineffective in failing to object to the flight instruction given at his trial. He argues that the evidence he left the scene of the murder was uncontroverted, therefore it was error to give the flight instruction. The OCCA,

however, found the evidence warranted the flight instruction, and Petitioner suffered no prejudice. *Cone*, slip op. at 2-3. "In cases where a defendant places himself at the scene of the crime and departs from the scene the instruction may be appropriate." *Williamson v. State*, 422 P.3d 752, 762 (Okla. Crim. App. 2018).

The record shows Petitioner fled to avoid arrest for the murder of the victim. He testified at trial that he fired his pistol at the victim in self-defense, then dropped the gun and ran, because he was scared and never had been in that situation before. (Tr. II, 149-51, 195, 199-200). Officer Rob Frazier received information that Petitioner was at a house on Irving Street the day after the murder. *Id*. at 98. Frazier observed Petitioner and others leave the house, get in a car, begin to leave, then pull back in the driveway, exit the car, and go around the back of the house. *Id* at 99. When Frazier searched the house, he was informed that Petitioner had jumped the fence and fled. *Id.*

Respondent argues the issue of flight was put before the jury by Petitioner when he attempted to explain why he fled the scene of the murder. The OCCA has long upheld giving a flight instruction where the defendant "testified at trial explaining his departure." *Ashton v. State*, 400 P.3d 887, 897 (Okla. Crim. App. 2017). In addition, the OCCA reviews the question of flight as "one of fact and not of law." *Vavra v. State*, 509 P.2d 1379, 1384 (Okla. Crim. App. 1973) (quoting *Ward v. State*, 444 P.2d 255, 259 (Okla. Crim. App. 1968)). The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

This Court finds the OCCA's holding that the instruction was warranted was not an unreasonable determination of the facts. The Court further finds that Petitioner has failed to show by clear and convincing evidence that this factual finding was unreasonable.

Because the instruction was warranted, Petitioner's trial counsel was not ineffective for failing to object. *See Spears v. Mullin*, 343 F.3d 1215, 1249 (10th Cir. 2003) (finding trial counsel was not ineffective for failing to object to a flight instruction where the OCCA found sufficient evidence supported giving the instruction). The OCCA also found Petitioner suffered no prejudice from the instruction or from trial counsel's failure to object. *Cone*, slip op. at 3. The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Here, the evidence was overwhelming. Three witnesses testified that Petitioner murdered the victim and shot Mr. Carmans (Tr. Vol. 1, 160, 177; Vol. II, 53). Without the flight instruction, Petitioner's jury would not have had "a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. The Court therefore finds the OCCA's determination of this claim was not contrary to, or an unreasonable application of Supreme Court law, or an unreasonable determination of the facts presented at trial.

**The Civil Instruction**

Petitioner alleges his trial counsel was ineffective in failing to object to a civil instruction that was given to the jury. He specifically asserts Civil Instruction No. 3.3, OUJI-CIV(2d), reduced the prosecution's burden of proof. Civil Instruction 3.3, titled

"No Speculation," states, "Your decision must be based upon probabilities, no possibilities. It may not be based upon speculation or guesswork." (Dkt. 18-5, No. 13).

The OCCA denied relief on this claim as follows: "Any error in the submission of OUJI 3.3 did not affect the outcome of the trial. Taken as a whole, the jury instructions did not allow jurors to recommend a sentence based on probabilities, but on the evidence presented. Cone has not shown plain error." *Cone*, slip op. at 2.

While the OCCA found there may have been error in giving the instruction, the Supreme Court has held:

> . . .[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief. Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient . . . . The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (internal citations and quotations omitted).

Looking at Petitioner's jury instructions as a whole, the Court finds the jury was fully instructed that its duty was to determine the facts; to apply the law to the facts; to avoid sympathy, prejudice, speculation or guesswork in determining a sentence; and to disregard testimony when an objection was sustained. (Dkt. 19-5). The jury also were instructed that the jurors were the sole judges of the value and believability of witness testimony and how to evaluate testimony, and that attorney statements were not evidence, along with an instruction on the prosecution's burden of proof. *Id.* The Court thus concludes that in the context of the other instructions, Civil Instruction 3.3 did not affect

the outcome of the trial.

In addition, Petitioner has failed to show that if his trial counsel had objected , and this instruction was excluded, that there is a reasonable probability the result of the trial would have been different. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. The Court, therefore, finds the OCCA's finding of no prejudice is not unreasonable. Further, Petitioner cannot show the OCCA's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Petitioner is not entitled to habeas relief on this claim. *See* 28 U.S.C. § 2254(d).

**Prior Inconsistent Statement Instruction**

Petitioner next alleges his trial counsel was ineffective in failing to object to a prior inconsistent statement instruction. The OCCA reviewed the underlying substantive claim for plain error, because this issue was not raised at trial. The Tenth Circuit has found that the OCCA's "formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock v. Trammel*, 798 F.3d 1002, 1011 (10th Cir. 2015); *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (finding "no practical distinction between the formulations of plain error . . . and the federal due-process test, which requires reversal when error so infused the trial with unfairness as to deny due process of law" (citation and internal quotation marks omitted)). When the OCCA rejects a claim "under the plain-error standard, the decision effectively disallow[s]

11

the possibility of a due process violation." *Hancock*, 798 F.3d at 1011. As Petitioner's underlying claim is without merit, his trial counsel was not ineffective for failing to object.

The OCCA held there was no plain error, because "the alleged deficienc[y] did not affect the outcome of the trial or result in a substantial violation of a constitutional or statutory right." *Cone*, slip op. at 2 (citation omitted). The OCCA further held Petitioner's trial counsel was not ineffective for failing to object, because Petitioner could not show prejudice. *Id*. at 3. This Court finds the OCCA's holding is supported by the record and not contrary to *Strickland*.

The record shows that Latreece Smith testified that she never had been to Tenesha Nunley's house prior to taking the victim there to purchase PCP. (Tr. Vol. II, 64). Petitioner's trial counsel then confronted Smith with her preliminary hearing testimony that she did not know the reason the victim wanted her to take him to that house, and that she had been to that house before. *Id*. at 65. The trial court instructed the jury that Ms. Smith previously had provided a prior inconsistent statement that only could be considered for impeachment purposes and not as proof of innocence or guilt. (Dkt. 18-5, No. 28). On direct appeal Petitioner claimed the jury should have been instructed that the prior inconsistent statement may be considered as proof of innocence. (Dkt. 18-1 at 21-22).

Petitioner, however, failed to explain on direct appeal or in his habeas petition how, or why, this is substantive evidence of his innocence. "Although we must liberally

construe [Petitioner's] pro se petition, we are not required to fashion [Petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (internal citation omitted). Neither the number of times Smith had been to Nunley's house, nor whether the victim bought PCP establishes Petitioner's innocence. The record shows that Smith did take the victim to Nunley's home, and Petitioner saw the victim leave as Petitioner arrived. Moreover, Petitioner murdered the victim because he believed the victim stole $25.00 from him. Neither version of the inconsistent statement helps establish Petitioner's innocence.

The OCCA held that Petitioner was unable to show plain error from the instruction. *Cone*, slip op. at 2. Because Petitioner cannot show plain error, he cannot show a denial of a fundamentally fair trial. *See Hancock*, 798 F.3d at 1011. Petitioner also is unable to show that had his jury been instructed as Petitioner argues, there is a substantial likelihood of a different result. *See Richter*, 562 U.S. at 112. Trial counsel therefore was not ineffective. Thus, the OCCA's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. This claim for habeas relief fails.

**Other Crimes Instruction**

Petitioner alleges his trial counsel was ineffective in failing to object to the trial court's omission of a portion of the limiting instruction on other crimes or bad acts

evidence. The OCCA reviewed the underlying substantive claim for plain error as this issue was not raised during Petitioner's trial. Again, the OCCA's "formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock*, 798 F.3d at 1011. Because Petitioner's underlying claim is without merit, his trial counsel cannot be ineffective for failing to object.

The OCCA held there was no plain error, because "the alleged deficienc[y] did not affect the outcome of the trial or result in a substantial violation of a constitutional or statutory right." *Cone*, slip op. at 2. The OCCA then held Petitioner's trial counsel was not ineffective for failing to object, because Petitioner could not show prejudice. *Id*. at 3. The OCCA's decision is supported by the record and not contrary to *Strickland*.

Tenesha Nunley, testified she had not sold PCP out of her house. She instead claimed Petitioner was the seller. (Tr. Vol. II, 9). This testimony clearly was unexpected and was not intentionally elicited for the purpose of proving Petitioner was a drug dealer. Defense counsel asked to approach the bench and requested a mistrial. *Id*. at 10-11. The trial court denied the request but acknowledged that "the surprise is that, obviously, we're now throwing the blame of selling drugs on [Petitioner]." *Id*. at 11. The subject never was brought up again with Nunley, and Petitioner testified on his own behalf that he neither sold nor used drugs. The trial court then correctly gave the following limiting instruction about evidence of other crimes to the jury during the closing instructions:

Evidence has been received that the defendant has allegedly committed an

offense other than that charged in the [I]nformation. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offense charged in the Information. This evidence is to be considered by you only for the limited purpose for which it was received.

(Dkt. 18-5, No. 23).

The instruction given to the jury omitted the sentence, "This evidence has been received solely on the issue of the defendant's alleged motive/opportunity/intent/ preparation/ (common scheme or plan) /knowledge/identity/ (absence of mistake or accident)." (Instruction No. 9-9, OUJI-CR(2d)). Respondent asserts the omitted sentence was properly removed as the evidence was not intentionally admitted as evidence to prove motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or an absence of mistake or accident.

The Court finds that including that language would have confused the jury. Thus, even if Petitioner's trial counsel had argued to include the language, that request would have properly been overruled. Petitioner's counsel was not ineffective for failing to raise a meritless objection.

Further, if Petitioner's counsel's request to include the language had been granted, and the jury was so instructed, Petitioner has not shown there is a reasonable probability that the outcome of the trial would have been different. Regardless of whether Petitioner or Nunley sold PCP, the evidence showed Petitioner believed the victim had stolen $25.00 from him, so he murdered the victim.

Petitioner testified on his own behalf that he did not sell drugs, although whether

Petitioner was actually a drug dealer never was an issue at trial. Consequently, any instruction that the evidence he was a drug dealer was admitted to prove motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or an absence of mistake or accident, would not have helped establish his innocence. Accordingly, Petitioner is unable to show that had his jury been instructed as he claims it should have, there is a substantial likelihood of a different result. *Richter*, 562 U.S. at 112. Thus, the OCCA's ruling that counsel was not ineffective was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. Petitioner is not entitled to habeas relief on this claim.

**Instruction on Lesser-Included Crime of Manslaughter**

Finally, Petitioner alleges his trial counsel was ineffective in failing to object that the instructions on the lesser-included offense of heat-of-passion manslaughter were incomplete. Petitioner claims the jury should have been instructed on Instruction Nos. 10-13, 4-95A, 4-97 through 4-99, and 4-101, OUJI-CR(2d), which relate to the defense of heat-of-passion manslaughter. Respondent asserts the jury was improperly instructed on the lesser-included offense of heat-of-passion manslaughter, because it was not supported by the evidence. (Dkt. 18-5, No. 37).

A review of the record shows there was no evidence to support the instruction on heat-of-passion manslaughter. Therefore, giving it to the jury was a windfall to Petitioner, and if it was incomplete, he was not harmed. The OCCA denied relief on the

16

underlying claim, holding that any alleged deficiency did not affect the outcome of the trial. *Cone*, slip op. at 2. The OCCA also denied Petitioner's ineffective assistance of counsel claim, finding Petitioner could not establish prejudice. *Id*. at 3. This Court finds Petitioner has failed to establish the OCCA's determination of this issue was an unreasonable application of *Strickland*, or an unreasonable determination of the facts presented at trial.

Instruction No. 10-13 is a basic instruction on how to return a verdict. The Notes on Use for Instruction No. 10-13 clearly state that "[t]his instruction should be used in cases where there are no lesser included offenses charged . . . ." OUJI-CR(2d) 10-13. Because the jury was instructed on a lesser-included offense, there was no error in omitting this instruction.

Regarding Instruction No. 4-95A, "Defense of Heat of Passion," the Court notes that Petitioner did not raise a heat-of-passion defense, thus, he was not automatically entitled to
the lesser-included instruction on heat-of-passion manslaughter. Although Petitioner did not raise the heat-of-passion defense, he nonetheless may have been entitled to the instruction under Oklahoma law.

> We have long recognized that when a defendant is charged with first-degree,
> premeditated murder, and he counters the charge with a claim of self-defense, the facts may be such as to warrant conviction on a lesser form of homicide, particularly heat-of-passion manslaughter. The fear of being injured or killed, such as might justify using deadly force in self-defense, is a kind of "passion" contemplated by the offense of heat-of-passion

manslaughter.

*McHam v. State*, 126 P.3d 662, 668 (Okla. Crim. App. 2005). Under the facts of the case, however, Petitioner was not entitled to a self-defense, heat-of-passion instruction.

The evidence clearly showed that Smith drove the victim and Robert Carmans to Nunley's house to purchase PCP. (Tr. Vol. I, 181; Vol. II, 42). When they arrived at Nunley's house, only the victim went inside to purchase the PCP from Nunley. (Tr. Vol. I, 181; Vol. II, 9, 43). While they were waiting at Nunley's house, Petitioner returned and saw the victim leave Nunley's house and get inside Smith's car. (Tr. Vol. II, 129). Petitioner then went inside Nunley's house to return her keys to her. Petitioner noticed that the $25.00 he had placed on Nunley's dryer was missing. *Id*. at 8, 129. He then left, asked around for the victim, returned to Nunley's house, talked to the victim on the phone, left Nunley's house again, and looked for the victim at a car wash before finally arriving at Smith's house. *Id*. at 12, 46-47, 131-135.

The only possible claim Petitioner could have had for heat of passion was his self-serving claim that he was afraid when the victim attacked him by holding Petitioner's throat. *Id*. at 146-47. This statement, however, was contradicted by three other witnesses. Petitioner thus was not entitled to the self-defense, heat-of-passion instruction, because there was no other evidence presented at trial to support Petitioner's assertion.

Under Oklahoma law, "[a] defendant's statements concerning the homicide are sufficient to warrant a jury instruction only if those statements are supported by other evidence presented at trial." *Davis v. State*, 268 P.3d 86, 117 (Okla. Crim. App. 2011).

"[W]hen the only evidence supporting the appellant's claim to an instruction on a lesser form of homicide was his own self-serving statements and those statements were contradictory and inconsistent with the other evidence presented at trial, the evidence was insufficient to warrant the jury instruction." *Cipriano v. State*, 32 P.3d 869, 874 (Okla. Crim. App. 2001) (paraphrasing *Newsted v. Gibson*, 158 F.3d 1058, 1092 (10th Cir. 1998)). Two witnesses, Travis Dobbins (Tr. Vol. I, 160-61) and Jullie Brittain, *id.* at 177, testified that Petitioner was at least five feet away from the victim when he fired his weapon. Thus, Petitioner's claim that his jury should have been instructed on Instruction No. 4-95A, OUJI-CR(2d), Defense of Heat of Passion, is incorrect.

Finally, as Petitioner was not entitled to a heat-of-passion manslaughter instruction, he also was not entitled to the other instructions on heat of passion, Instruction Nos. 4-97 through 4-99 and 4-101, which the Notes on Use for Instruction No. 4-95A state also should be used. As stated above, the fact that the jury was instructed on heat-of-passion manslaughter as a lesser-included offense was a windfall for Petitioner, and he cannot now complain that the instructions were incomplete. The Court, therefore, finds there was no error in the failure to give instructions to which the defendant was not entitled. *See Hawkins*, 185 F.3d at 1152.

After careful review, the Court also finds Petitioner has not shown that had his trial counsel objected, and the allegedly missing instructions had been included, there is a reasonable probability the result of his trial would have been different. Therefore, the OCCA's finding of no prejudice is not unreasonable. The Court further finds Petitioner

cannot show the OCCA's ruling was consistent with Supreme Court law. This claim for habeas relief also fails.

**Prosecutorial Error**

Petitioner's second ground for relief alleges his trial counsel was ineffective in failing to object to alleged instances of prosecutorial error. On direct appeal, he raised a claim of prosecutorial error, as well as a claim of ineffective assistance of counsel for failing to object to the prosecutorial error. The OCCA denied relief on both claims on the merits:

> . . . When the challenged comments of the prosecutor are read in context, considering the corresponding arguments of defense counsel and the strength of the evidence, there is nothing in the challenged comments, individually or cumulatively, that deprived Cone of a fair trial. . . .
>
> Cone cannot show any prejudice from defense counsel's failure to object to . . . specific instances of prosecutorial misconduct . . . because there was no prosecutorial misconduct . . . .

*Cone*, slip op. at 3 (citations omitted).

In this habeas action, Petitioner has abandoned the prosecutorial error claim, raising only the ineffective counsel claim. Respondent alleges that because the underlying claim of prosecutorial error is meritless, Petitioner's claim of ineffective assistance of counsel related to the prosecutorial error also must fail.

Petitioner complains his trial counsel was ineffective for failing to object to the following instances of alleged prosecutorial error: (1) the prosecution's evoking sympathy for the victim, (2) the admission of State's Exhibit 20, and (3) the prosecution's

misleading the jury. In a claim of prosecutorial error, it "is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted). Respondent asserts the OCCA's determination that Petitioner's trial counsel was not ineffective for failing to object to alleged instances of prosecutorial error was not contrary to, or an unreasonable application of Supreme Court law, or an unreasonable determination of facts presented at trial. *See* 28 U.S.C. § 2254(d).

Because Petitioner's trial counsel did not object to the prosecutor's comments, the OCCA reviewed the claims for plain error. *Cone*, slip op. at 3. As noted earlier, the OCCA's "formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock*, 798 F.3d at 1011; *Thornburg*, 422 F.3d at 1125. When the OCCA rejects a claim "under the plain-error standard, the decision effectively disallow[s] the possibility of a due process violation." *Hancock*, 798 F.3d at 1011. As shown below, Petitioner's underlying claim of prosecutorial error is without merit, thus, under 28 U.S.C. § 2254(d), his trial counsel was not ineffective for failing to object.

**Sympathy for the Victim**

Petitioner claims the prosecution evoked sympathy for the victim through the comment that he had to be the "voice for the victim." (Tr. Vol. III, 19). The prosecution began his second closing argument by stating:

It's hard to not let emotion enter into this, because emotion is what got us to this point. The Judge instructed you that you're not supposed to let sympathy of prejudice enter into your deliberations and your decisions. And I agree with that. But I have to be the voice for Skylar Brewer, because he's dead. Mr. Cook is doing his job by talking about him the way he does, but he's dead. So I'm his voice here today with you, because he doesn't have a voice.

*Id.*

The OCCA found no error in the comment. *Cone*, slip op. at 3. The OCCA also denied Petitioner's ineffective assistance claim, because this underlying claim was without merit. *Id*. at 3. The record shows the prosecution actually emphasized the trial court's instruction that the jury was not supposed to let sympathy play a part in the deliberations. The basis of Petitioner's complaint is that even though the prosecution emphasized the trial court's instruction against sympathy, the prosecution then said "but," he had to be the "voice for the victim." However, when read in context of the argument, it is clear the prosecution was not using the conjunction "but" to ask the jury to disregard the trial court's instruction. Rather, the prosecution was saying that regardless of the prosecutor's role, the jury must still follow the instructions. Because any objection would have been properly overruled, there was no prejudice, and the failure to object did not constitute deficient performance.

Further, as discussed above, the evidence against Petitioner was overwhelming. A determination of prosecutorial error can only be made after considering all the surrounding circumstances, including the strength of the prosecution's case. *See Darden*, 477 U.S. at 181-182. Considering the argument in the context of the entire trial,

the comment clearly did not result in a denial of due process. *See Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005) (addressing a victim sympathy claim where the prosecutor conducted a substantial portion of his argument in the voice of the deceased victim and finding no constitutional error where the prosecutor's argument was based on the evidence presented).

The OCCA reviewed Petitioner's allegations of ineffective assistance of counsel on the merits and denied relief. This Court again finds the OCCA's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court law, nor an unreasonable determination of the facts. Petitioner cannot show that the OCCA's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Petitioner, therefore, is not entitled to habeas relief on this claim.

**State's Exhibit 20**

Petitioner claims his trial counsel was ineffective in failing to object to the prosecution's improperly admitting State's Exhibit 20 into evidence without proper authentication. State's Exhibit 20 is a photograph of a blood stain in the grass near the left front tire of Smith's vehicle. The blood stain was used to establish the distance between the victim and Petitioner, as eyewitness testimony placed Petitioner at the rear of the vehicle and the victim at the front. The OCCA found no error in admitting this exhibit. *Cone*, slip op. at 3. The OCCA also denied Petitioner's ineffective assistance

claim, because this underlying claim was without merit. *Id.*

This Court finds Petitioner's argument must fail, because under Oklahoma law, the photograph was properly admitted:

> A photograph may be authenticated by any method sufficient to establish that it depicts what it purports to depict, including (1) comparison by the trier of fact with other evidence that has been authenticated, and (2) "[a]ppearance, content, substance, internal patterns or other distinctive characteristics taken in conjunction with circumstances."

*Grant v. State*, 205 P.3d 1, 21 (Okla. Crim. App. 2009) (citing Okla. Stat. tit. 12, § 2901(A), (B)(3), (4)). Therefore, any objection to the photograph would have been properly overruled and cannot constitute deficient performance.

The record shows the prosecution was cross-examining Petitioner on his testimony that the victim attacked him near the rear of Smith's vehicle. (Tr. Vol. II, 193-194). The prosecution then handed Petitioner State's Exhibit 4 and asked him to identify where the blood from the victim was. Petitioner acknowledged that the blood was close to the left front tire of the vehicle. (*Id*. at 195; State's Exhibit 4). The prosecution then handed Petitioner State's Exhibit 20, which by all accounts is the same photograph as State's Exhibit 4, except it is a close-up view of the blood around the left front tire of Smith's vehicle. (Tr. Vol. II, 195-196; State's Exhibits 4, 20 (Dkt. 18-6)).

Petitioner admitted that State's Exhibit 20 was a photo of the victim's blood near the tire, and the prosecution moved to admit the exhibit into the evidence. (Tr. Vol. II, 195-196). Petitioner's counsel did not object to the photograph and the trial court admitted it. *Id*. at 196. As stated above, State's Exhibit 20 is substantially the same

photo as State's Exhibit 4. Petitioner himself recognized and identified the blood in both photos. Petitioner thus has failed to show that the admission of this exhibit was error, much less that his trial counsel was ineffective for failing to object to its admission.

The OCCA reviewed Petitioner's allegations of ineffective assistance of counsel on the merits and denied relief. As shown above, the OCCA's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court law, nor an unreasonable determination of the facts. For these reasons, Petitioner is not entitled to habeas relief on this claim.

**Misleading the Jury**

Petitioner alleges his trial counsel was ineffective in failing to object to the prosecution's attempt to mislead the jury into thinking Petitioner had committed an uncharged crime. The OCCA denied relief on this claim. *Cone*, slip op. at 3. The OCCA also found no merit in Petitioner's ineffective assistance claim, because the underlying claim was meritless. *Id.*

During the prosecution's cross-examination of Petitioner, the prosecutor attempted to establish a timeline of when, and how long, Petitioner had possessed the firearm he used to murder the victim. (Tr. Vol. II, 156-159). Petitioner was evasive about when he purchased the firearm and how long actually had had it. *Id.* The prosecutor then asked, "That's probably not the type of transaction that you get a receipt or anything for; is it? *Id.* at 158. Petitioner asked the prosecutor, "Explain that to me." *Id.* The prosecutor responded, "When you give a guy 50 bucks and he gives you a gun, you don't-- that's not

25

a legitimate transaction; is it? You don't get a receipt and say, 'Here, this is a registered firearm?'" *Id*. at 158-159. Petitioner replied, "No." *Id*. at 159.

Petitioner asserts his trial counsel was ineffective in failing to object to the prosecution's alleged attempt to mislead the jury into thinking Petitioner's firearm purchase was not a legitimate transaction, when Petitioner admitted he owned the firearm and shot the victim. *Id*. at 154-159.

Prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Donnelly*, 416 U.S. at 642-648. Petitioner's trial counsel did not object, thus, the OCCA reviewed the claims for plain error. *Cone*, slip op. 3. As stated above, the OCCA's "formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock*, 798 F.3d at 1011. *See also Thornburg*, 422 F.3d at 1125. As Petitioner's underlying claim of prosecutorial error is without merit, his trial counsel cannot be ineffective for failing to object. Therefore, Petitioner is not entitled to habeas relief on this claim. Further, the OCCA's determination of this claim was consistent with *Strickland*.

**Cumulative Error**

Finally, Petitioner alleges the accumulation of errors in his trial violated his constitutional rights. On direct appeal, the OCCA found no merit in this claim: "There are no errors, considered individually or cumulatively, that merit relief in this case." This claim is denied." *Cone*, slip op. at 3-4 (citing *Jones v. State*, 201 P.3d 869, 894

(Okla. Crim. App. 2009); *DeRosa v. State*, 89 P.3d 1124, 1127 (Okla. Crim. App. 2004)).

"[T]he Supreme Court has never recognized the concept of cumulative error" *Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019). Nonetheless, "[c]umulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) *cert. denied*, 522 U.S. 844 (1997)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated.").

Here, the OCCA and this Court found no errors in Petitioner first and second grounds for relief. The Court, therefore, concludes Petitioner cannot establish there was cumulative error, or that the OCCA's decision was contrary to Supreme Court law. He, therefore, is not entitled to habeas relief on this claim.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, Petitioner should be denied a certificate of appealability.

27

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 30th day of September 2019.

James H. Payne
United States District Judge
Eastern District of Oklahoma